**James R. FOYE, Individually and d/b/a Elite Business Systems Inc., Appellant,**

**v.**

**Lynette MONTES, Appellee.**

**No. 14–98–00665–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 16, 1999.

Rehearing Overruled Jan. 20, 2000.

Mark W. Stevens, Galveston, for appellant.

Carroll Lee S. Cobb, Galveston, Thomas N. Thurlow, Jonathan Scott Stoger, Houston, for appellee.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION

LESLIE BROCK YATES, Justice.

Lynette Montes, appellee, sued James R. Foye and Elite Business Systems (EBS), appellants, claiming that Foye made sexual advances toward her and sexually harassed her while she was an employee. Montes asserted claims of intentional infliction of emotional distress and assault. The case was tried without a jury before the court. The trial court entered judgment against Foye in the amount of $30,000.00. Foye appeals this judgment in three points of error, challenging the legal sufficiency of the evidence to uphold the verdict. We affirm.

## STANDARD OF REVIEW

In reviewing a challenge to the legal sufficiency of the evidence, a reviewing court must consider only the evidence and reasonable inferences therefrom, which, when viewed in the most favorable light, support the findings of the fact finder (in this case the trial judge). *See Southwestern Bell Mobile Sys., Inc. v. Franco*, 971 S.W.2d 52, 54 (Tex.1998); *Harris County Dist. Attorney's Office v. M.G.G.*, 866 S.W.2d 796, 797 (Tex.App.— Houston [14 th Dist.] 1993, no writ); *Ben Fitzgerald Realty. Co. v. Muller*, 846 S.W.2d 110, 119 (Tex.App.—Tyler 1993, writ denied). We must disregard all evidence and inferences which are contrary to the findings. *See id.* If the evidence is legally sufficient when viewed in this light, then we may not reverse the trial court's judgment. *See Franco*, 971 S.W.2d at 54; *M.G.G.*, 866 S.W.2d at 798.

## FACTUAL BACKGROUND

The following facts were adduced at trial.[1] Foye, the proprietor of EBS, hired Montes in late July of 1996 to be an office manager and his personal assistant. During the first week of employment, Foye invited Montes to a "welcome aboard" lunch. Montes testified that Foye asked a couple of questions she thought were strange, such as "What do you think of me as a man?" He also indicated he worked out at a gym and was concerned about how he looked. Montes testified that she felt

1. Because we have been asked to review only the legal sufficiency of the evidence, only the facts tending to support the trial court's judgment have been detailed.

Foye was "coming on to her" and that the conversation made her uncomfortable. Montes stated that Foye continually asked her to lunch while she was employed at EBS and that she turned him down about "half of the time." During these lunches, Montes complained that Foye asked her questions regarding her personal life, including whether she was "happily married."

According to Montes, Foye often called her at home. During one call, he allegedly asked her out to a movie or out for a drink. During another call, Montes testified that Foye asked her if she slept with a bra on. Montes said that the calls were upsetting to her husband. As a result, Montes asked Foye to stop calling her at home. She testified that she went into Foye's office on several occasions and asked him to stop calling her and informed him that she did not want to have a personal relationship with him. Montes said that she threatened to quit or to file a sexual harassment claim against him if he did not change his behavior.

Other incidents that Montes complained about included Foye's recommendation of two movies to her. One was *The Bounty* and the other was *Like Water for Chocolate.* According to Montes, watching the latter movie caused her severe emotional distress because it depicted sex and nudity. Also, on a couple of occasions, Foye asked Montes to put gas in his car. She testified there were "lover notes" [sic] left in the car for her to see. One such note said something like "you drive me crazy," and another had the word "sex" or "sexual" in it. Montes testified that Foye asked her not to wear lipstick because he "didn't like the taste" of it. On another occasion, Montes claimed Foye said she had a "heart-shaped ass."

In August of 1996, Foye had Montes come into his office to help him with programing his phone. Foye was on the phone with a client while Montes was adjusting the phone. Montes testified that, "[a]ll of a sudden he just turned around and he slapped me on the rear end. And he told me, 'stop doing that.' ... And [Foye] says, 'you are making the phone beep pushing those buttons.'" Montes stated she was offended, she thought Foye acted inappropriately, and she believed he could have gotten her attention in a less offensive manner.

Montes testified that she complained to Foye about his behavior and threatened to quit. She also threatened to file a sexual harassment lawsuit. While Montes admitted that Foye never directly asked her for sexual favors, she claimed that it was implied through his voice and gestures and by a comment that she could advance in the company if she would "play by his rules." Montes also complained that Foye gave co-workers a bonus and did not give her one because he wanted to upset her.

In December of 1996, Foye invited Montes to attend a client's Christmas party with him. Montes felt uncomfortable because the other guests were with their spouses. At the party, Montes claims that Foye, while sitting next to her, "reached over and put his hand on my thigh and said, 'would you like to go have a drink or something.'" "And he just kind of rubbed his hand up my thigh, so to speak, and said, 'a lot can be done in an hour and a half.'" Montes testified that she was very upset and felt "violated."

Shortly after Christmas, Montes was terminated from EBS.[2] In July 1997, she began seeing Sharon P. Davis, a psychologist. Davis diagnosed Montes as suffering from "severe emotional distress." She

---

**2.** There was conflicting evidence offered at trial concerning the reason for Montes's termination. However, whether Montes's termination was justified or wrongful is not germane to any issue before this court. *See Southwestern Bell Mobile Systems, Inc. v.* *Franco,* 971 S.W.2d 52 (Tex.1998) (holding that mere fact of termination, even if wrongful, is not legally sufficient evidence that the employer's conduct was extreme and outrageous).

opined that it was workplace incidents that caused Montes's depression.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Appellants' first point of error alleges the evidence is legally insufficient to establish a cause of action for intentional infliction of emotional distress. Appellants' second point of error claims there is no evidence that Montes's depression was caused by Foye.

■ To recover for the tort of intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant acted intentionally or recklessly; (2) the conduct was "extreme and outrageous;" (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Franco*, 971 S.W.2d at 54 (citing *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993)).

■ We first address whether the facts presented at trial were legally sufficient to prove that the conduct of Foye was extreme and outrageous.

> To be extreme and outrageous, conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' Generally, insensitive or even rude behavior does not constitute extreme and outrageous conduct. Similarly, mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities do not rise to the level of extreme and outrageous conduct.

*GTE Southwest Inc. v. Bruce*, 998 S.W.2d 605, 611–12 (Tex.1999) (citations omitted). When ongoing harassment is alleged, the offensive conduct is evaluated as a whole. *Id.* at 615. Generally, liability for intentional infliction of emotional distress has only been found in those cases in which a

recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous!" *See Gearhart v. Eye Care Ctrs. of Am., Inc.*, 888 F.Supp. 814, 819 (S.D.Tex.1995). Even conduct which may be illegal in an employment setting may not constitute the sort of behavior that constitutes "extreme and outrageous" conduct. *See id.* Only in the most unusual of employment cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous. *See Bruce*, 998 S.W.2d at 613 (citing *Porterfield v. Galen Hosp. Corp., Inc.*, 948 S.W.2d 916, 920–21 (Tex.App.—San Antonio 1997, writ denied)).

■ Viewing all of the evidence presented at trial, we fail to see the extreme and outrageous nature of Foye's behavior. Without a doubt, his behavior could be described as rude, offensive, and annoying.[3] However, it falls short of the necessarily high standard for intentional infliction of emotional distress. *See, e.g., Gonzales v. Willis*, 995 S.W.2d 729 (Tex. App.—San Antonio 1999, no pet.) (Angelini and Duncan, J.J., concurring, but not finding explicit conduct extreme and outrageous). Even viewing the evidence in the light most favorable to the trial court's findings, we are unable to find that an average member of the community, upon reading these facts, would exclaim "outrageous." *See Gearhart*, 888 F.Supp. at 819. Furthermore, other courts which have reviewed conduct similar to that alleged by Montes have concluded that the evidence is insufficient to state a claim for intentional infliction of emotional distress. *See Gearhart*, 888 F.Supp. at 823; *Garcia v. Andrews* 867 S.W.2d 409 (Tex.App.—Corpus Christi 1993, no writ). Because Montes's evidence at trial fell short of the "extreme and outrageous" standard, we sustain Foye's first point of error.

---

**3.** We agree with the trial judge's remarks at the conclusion of the trial that Foye's behavior was inappropriate. However, "inappro-priate" behavior is not sufficient to sustain a cause of action for intentional infliction of emotional distress.

Having found that evidence is legally insufficient to uphold a finding of intentional infliction of emotional distress, we need not address Foye's second point of error.

## ASSAULT AND BATTERY

■ In his third point of error, Foye alleges that the evidence was legally insufficient to establish assault and battery. In Texas, an assault is both an offense against the peace and dignity of the State, as well as an invasion of private rights. *See Wal–Mart Stores, Inc., v. Odem,* 929 S.W.2d 513, 522 (Tex.App.—San Antonio 1996, writ denied) (citing *Texas Bus Lines v. Anderson,* 233 S.W.2d 961, 964 (Tex.Civ. App.—Galveston 1950, writ ref'd n.r.e.)). For that reason, the definition of assault, whether in a criminal or civil trial, is the same. *See id.* Under the Texas Penal Code, a person commits the offense of assault if the person "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." Tex. Pen.Code Ann. § 22.01(a)(3) (Vernon 1994).

■ Foye argues that there must be some proof of injury to recover damages for a tortious assault and battery. However, while proof of injury or intent to injure may be a requirement under other provisions of the penal code, actual injury is not required under section 22.01(a)(3). In this case, rather than physical injury, offensive contact is the gravamen of the action; consequently, the defendant is liable not only for contacts which cause actual physical harm, but also for those which are offensive and provocative. *See Petta v. Rivera,* 985 S.W.2d 199, 207 (Tex.App.— Corpus Christi 1998, no pet.) (citing *Fisher v. Carrousel Motor Hotel Inc.,* 424 S.W.2d 627 (Tex.1967)).

■ Foye argues, in the alternative, that the two complained of assaults were neither sexual nor offensive. First, there is no requirement in the penal code that the contact be sexual. Second, the record, when viewed in the light most favorable to the court's findings, belies Foye's characterization of the contacts as unoffensive, a "tap," and "nothing more than a common social gesture."

■ The evidence at trial shows that Foye slapped Montes on the rear-end on one occasion and rubbed his hand up her thigh on another. Montes stated that she was upset and offended by these actions. We find that the evidence is legally sufficient to support the trial court's implied finding that Foye assaulted Montes. *See Stokes v. Puckett,* 972 S.W.2d 921, 925 (Tex.App.—Beaumont 1998, pet. denied) (finding evidence that employer touched employees' rear-end and breasts both legally and factually sufficient to support jury's finding of assault). Point of error three is overruled.

## CONCLUSION

In this case, no findings of fact or conclusions of law were requested or filed. "In a non-jury trial, where no findings of fact or conclusions of law are filed or requested, it is implied that the trial court made all the necessary findings to support its judgment." *Roberson v. Robinson,* 768 S.W.2d 280, 281 (Tex.1989). "The judgment must be affirmed if it can be upheld on any legal theory that finds support in the evidence." *Worford v. Stamper,* 801 S.W.2d 108, 109 (Tex.1990). We therefore uphold the judgment of the trial court, finding legally sufficient evidence to support the assault and battery cause of action. The trial court's judgment is affirmed.